UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KAREN YAVONNE BURNS,

                                            19-CV-81-MJR
                                            DECISION AND ORDER

                        Plaintiff,

      -v-

ANDREW SAUL,
Commissioner of Social Security,

                        Defendant.

      Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 14).

      Plaintiff Karen Yavonne Burns brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding her ineligible for Supplemental Security Income ("SSI") under the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, Burns' motion (Dkt. No. 10) is granted, the Commissioner's motion (Dkt. No. 12) is denied, and the case is remanded.

## BACKGROUND[1]

      Burns protectively filed an application for SSI on March 30, 2015, alleging a disability as of April 12, 2013, due to diabetes, schizoaffective disorder, bipolar, high blood pressure, and high cholesterol.  (Tr. 11, 215-223, 233).[2]  Her SSI claim was initially denied

---

[1] The Court assumes the parties' familiarity with the record in this case.
[2] References to "Tr." are to the administrative record in this case.

July 2, 2015.  (Tr. 155-166).  On July 23, 2015, Burns filed a timely written request for a hearing.  (Tr. 167-169).

On July 20, 2017, a hearing was conducted by Administrative Law Judge ("ALJ") Bryce Baird, in Buffalo, New York.  (Tr. 61-104).  Burns appeared at the hearing, along with her attorney.  A vocational expert also appeared.

On October 4, 2017, the ALJ issued a decision finding Burns not disabled.  (Tr. 8-29).  That decision became final when on November 14, 2018, the Appeals Council denied her request for review.  (Tr. 1-7).  This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).  First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c).  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in

Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Burns had not engaged in substantial gainful activity since March 30, 2015, her application date. (Tr. 13).  At step two, the ALJ concluded that Burns has the following severe impairments: obesity; diabetes mellitus; lumbago; cervicalgia; pancreatitis; patella-femoral arthritis; schizoaffective disorder; depression; anxiety, and post-traumatic stress disorder. (Tr. 14).  At step three, the ALJ found that Burns does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 14-16).  Before proceeding to step four, the ALJ assessed Burns' RFC, finding that she could perform medium work, but with several limitations based both on her physical and mental impairments. (Tr. 16).  Proceeding to step four, the ALJ found that Burns has no past relevant work.  (Tr. 22).  At step five, the ALJ found that, considering Burns' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, including Dishwasher, Warehouse Worker, and Hand Packer. (Tr. 22-23). Accordingly, the ALJ concluded that Burns is not disabled under the Act. (Tr. 23-24).

IV.   _Burns' Challenges_

Burns' argues, _inter alia_, that this case must be remanded because the only medical opinion relied upon by the ALJ as to her medical condition was stale.  The Court agrees with Burns and finds that the case must be remanded.

An ALJ may not rely on medical source opinions that are stale when determining the claimant's RFC.  _Biro v. Comm'r of Soc. Sec._, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018) (citing _Andrews v. Berryhill_, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (remanding for staleness when ALJ relied on consultative examination that occurred prior to multiple surgeries over five years)); _Camille v. Colvin_, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015); aff'd, 652 F. App'x 25 (2d Cir. 2016).   A medical opinion may be stale if it is remote in time and does not account for a claimant's deteriorating condition. See, e.g., _Jones v. Comm'r of Soc. Sec._, 10-CV-5831, 2012 U.S. Dist. LEXIS 119010 (E.D.N.Y. Aug. 22, 2016) (finding that the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition."); _Hawkins v. Colvin_, 15-CV-6394, 2016 U.S. Dist. LEXIS 148380 (W.D.N.Y. Oct. 26, 2016) ("the consultative medical examination report was 'stale' at the time of the ALJ's decision, insofar as the report was issued prior to plaintiff's degenerative disc disease becoming symptomatic."); _Girolamo v. Colvin_, 13-CV-06309, 2014 U.S. Dist. LEXIS 72749 (W.D.N.Y. May 28, 2014) (ALJ improperly relied upon opinions of consulting physicians rendered "prior to [p]laintiff's second surgery in 2011 and the related diagnostic testing associated therewith."); see also _Jeffords v. Comm'r of Soc. Sec._, No. 17-CV-1085-MJR, 2019 WL 1723517, at *7 (W.D.N.Y. Apr. 18, 2019) (remanding for staleness when ALJ relied "almost exclusively,

on medical opinions ... prior to plaintiff's 2013 spinal surgery and 2014 fall"); *Morales v. Comm'r of Soc. Sec.*, No. 17 CV-341-FPG, 2019 WL 1109572, at \*6 (W.D.N.Y. Mar. 11, 2019) (remanding where ALJ relied on consultative examiner's opinion that did not address "multiple hernia repair surgeries" and was rendered before two additional surgeries; *Pagano v. Comm'r of Soc. Sec.*, No. 16-CV-6537-FPG, 2017 WL 4276653, at \*5 (W.D.N.Y. Sept. 27, 2017) ("A stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding.").

Here, in determining Burns' physical RFC, the ALJ relied solely on the medical opinion of consultative internist, Dr. Hongbiao Liu, M.D., following a single examination of Burns on June 12, 2015. (Tr. 290-294). At the time he examined Burns, Dr. Liu had no imaging of Burns' spine. *Id*. The ALJ assigned "great evidentiary weight" to Dr. Liu's opinion. (Tr. 22).

The ALJ erred in relying on the opinion of Dr. Liu as it was stale. Dr. Liu's opinion was rendered in 2015. However, Burns was in a car accident on April 3, 2017, two years after Dr. Liu's opinion. (Tr. 81, 817). After the accident, on April 21, 2017, Burns started treating with a chiropractor, Dr. Scott Croce, D.C.[3] (Tr. 817). Burns reported that she had pain in her neck, mid and lower back, and right knee. (Tr. 817). Dr. Croce noted that Burns had deficient grip strength in her left hand and limited cervical spine and lumbar spine range of motion. (Tr. 818). A cervical compression test and Jackson's lateral compression test were positive on the left, Kemp's and Bechtrerew's tests were positive on the right. (Tr. 817-20). Dr. Croce prescribed a back brace and

---

[3] The Court recognizes that chiropractors are not acceptable medical sources under the Social Security regulations, and that a chiropractor's opinion is not a medical opinion. See 20 C.F.R. 416.913. However, the Court is referring to Burns' treatment by Dr. Croce only as background concerning the deterioration of Burns' back problems and the reason for her having a spinal MRI.

TENS unit for Burns.  (Tr. 819).  Thereafter, Burns was seen for several chiropractic treatments.  (Tr. 805-816).  On May 16, 2017, a reassessment showed moderate-marked distress, with an impaired gait and antalgic posture; limited range of motion; positive left cervical compression; bilateral Jackson's lateral compression; and right Kemp's and Bechterew's tests.  (Tr. 809-10).  Dr. Croce referred Burns for an MRI. (Tr. 810).

On July 6, 2017, Burns underwent both a cervical spine and a lumbar spine MRI. (Tr. 836-839).  The cervical spine MRI showed crowding of the CSF space at the craniocervical junction; dehydration throughout the cervical discs; a broad disc bulge at C5-6; and a small disc herniation at T1-2.  (Tr. 836-37).  The lumbar spine MRI showed dehydration at L3-4, with a mild disc bulge effacing the fat to the right nerve root; a facet hypertrophy at L4-5; and disc dehydration and herniation at L5-S1.  (Tr. 838-39).

At her ALJ hearing, Burns complained that her back pain was worse since the car accident.  (Tr. 81).  She testified that she has stabbing, sharp pain in her back.  (Tr. 82). She also stated that her back sometimes gives out when she tries to lift things.  (Tr. 82-83).

Dr. Liu's opinion was stale because: (1) it was rendered more than two years before the hearing; (2) there was an intervening car accident in which Burns claims to have hurt her back; and (3) in rendering his opinion, Dr. Liu did not have available to him any imaging of Burns' spine and in particular, the positive MRI findings from July 6, 2017.

Because Dr. Liu's opinion was stale, the ALJ erred in relying on it.  Consequently, because Dr. Liu's opinion was the only medical opinion upon which the ALJ relied when determining Burns' physical RFC, there is now a gap in the record necessitating a

remand.  See *Smith v. Saul*, No. 17-CV-6641-CJS, 2019 WL 2521188, at *2 (W.D.N.Y. June 19, 2019) ("Decisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence."); see also *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (rejecting medical opinion left gaps in the record triggering duty to develop the record).  "As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations ..., to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Nanartowich v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-6096P, 2018 WL 2227862, at *11–12 (W.D.N.Y. May 16, 2018) (quoting *Gross v. Astrue*,No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014)); see also *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) ("In the absence of a medical opinion to support the ALJ's finding ... the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").[4]

---

[4] Burns also argues that the ALJ erred in evaluating Burns' ability to deal with supervisors.  Because the case is being remanded anyway, the Court will not address this issue here, but instructs the Commissioner to consider it on remand.

## CONCLUSION

For the reasons stated, Burn's motion for judgment on the pleadings (Dkt. No. 10) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is denied, and this case is remanded for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:     June 2, 2020
           Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge